question is plain that there was no such intention. As to the effect of this section 31, see People ex rel. City of Buffalo v. N. Y. C., 156 N. Y. 570, 51 N. E. 312; People ex rel. City of Niagara Falls v. N. Y. C., 158 N. Y. 410, 53 N. E. 166; Village of Champlain v. McCrea, 165 N. Y. 264–270, 59 N. E. 83.·

We conclude that the order was improperly granted and should be reversed.

ROBSON, J., concurs.

---

### CONRAD v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. March 9, 1910.)

1. RAILROADS (§ 398*)—INJURIES TO PERSONS WORKING ON TRACK—NEGLIGENCE —SUFFICIENCY OF EVIDENCE.

In an action for death of one struck by a train while working on a viaduct being constructed for defendant railroad, evidence *held* to show that the train operatives were negligent in running the train on the viaduct without ascertaining whether men were at work there.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 398.*]

2. RAILROADS (§§ 355, 358*)—INJURIES TO PERSON WORKING ON TRACK—LICENSEES—CARE REQUIRED.

Employés of a contractor engaged in constructing a viaduct for defendant railroad, and whose duties required them to be on the tracks, were not mere volunteers, and defendant owed them the duty to use reasonable care for their protection.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1225, 1236; Dec. Dig. §§ 355, 358.*]

3. RAILROADS (§ 401*)—INJURIES TO PERSON WORKING ON TRACK—NEGLIGENCE —INSTRUCTIONS.

In an action for death of one struck by a train while working on a viaduct being constructed for defendant railroad, where it appeared that because of smoke and steam enveloping the viaduct men working thereon could not be seen by the train operatives, though they knew or should have known that men were there, an instruction that if the smoke or steam obscuring the view was the sole cause of the injury, and if the smoke had not been there the accident would not have happened, defendant was not liable, was properly refused.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 401.*]

4. RAILROADS (§ 377*)—INJURIES TO PERSONS WORKING ON TRACK—NEGLIGENCE.

Where defendant railroad's engineer knew or should have known that men might be working on a viaduct being constructed for defendant, and because of the smoke and noise resulting from the work the men could not hear or see the train approaching, and because of such smoke and the noise of the train the engineer could not hear or see them, he was not entitled to assume that, the proper warning signals having been given by him, persons on the track would leave it in time to escape injury, whether he could see them there or not.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1280; Dec. Dig. § 377.*]

5. DEATH (§ 99*)—PERSONAL INJURIES—EXCESSIVE DAMAGES.

Deceased, a structural iron worker, about 29 years old, was in good health and perfect physical condition, and earned $4 a day, all of which

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

he devoted to the support of his wife and two young children. His habits were good, and the evidence indicated that his capabilities were such that he might reasonably have been expected to earn much more than he was receiving. *Held,* that a verdict for $12,000 was not excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

6. APPEAL AND ERROR (§ 1004*)—VERDICT—EXCESSIVE VERDICT.

It is the duty of the Supreme Court to determine on appeal, when the matter is properly presented, whether a verdict is inadequate or excessive.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

Williams, J., dissenting in part.

Appeal from Trial Term, Erie County.

Action by Delia Conrad, as administratrix of the estate of John Conrad, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff for $12,000, with interest and costs amounting to $622.59, amounting in all to $12,622.59, and from an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

M. C. Spratt, for appellant.
W. H. Ticknor, for respondent.

McLENNAN, P. J.   On the 1st day of January, 1909, at about 8:30 a. m., plaintiff's intestate, being in the employ of the Pittsburg Construction Company, a subcontractor engaged in constructing a viaduct for the defendant over Broadway, in the city of Buffalo, was engaged as a riveter on the floor of the viaduct, over which defendant's trains were passing. While so engaged he was struck by an engine carrying one of defendant's trains over such structure and was so injured that he died soon thereafter.

It is not urged on this appeal that the evidence did not tend to establish actionable negligence as against the defendant and freedom from contributory negligence on the part of the deceased. The learned counsel for appellant urges, however, that the judgment should be reversed and a new trial granted because of the alleged error of the trial court in refusing to charge the jury as requested by such counsel, and also because the damages awarded are excessive.

In order to determine whether or not error was committed by the trial court in refusing to charge as requested, it is well to have in mind the facts, the surroundings, and circumstances which the jury were justified in finding existed at the time of the accident. The defendant and the city of Buffalo, a year or more previous to the accident, had entered upon the project of constructing a viaduct across Broadway, one of the streets in said city, pursuant to the provisions of the "grade crossing act" (Laws 1888, c. 345), so-called; the purpose being to carry all the traffic of the defendant at that point on such viaduct, thus eliminating a grade crossing at Broadway. To that end.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the defendant entered into a contract with the Riter-Conley Manufacturing Company to construct such viaduct for it. The Riter-Conley Company sublet its contract to the Pittsburg Construction Company, and at the time of the accident it was engaged in constructing the viaduct. It had been so far completed that a large number of defendant's trains were passing over it daily, and so notwithstanding a large number of the employés of the Pittsburg Construction Company were still at work upon the structure and on and about the tracks of the defendant's railway which passed over the viaduct. At the time in question, plaintiff's intestate, with a helper, was engaged in riveting a beam on the floor of the viaduct, and to do his work it was necessary for him to go between the rails of defendant's tracks. Several other gangs of riveters were engaged upon the structure. The riveting was being done by means of pneumatic hammers, which were driven by compressed air. A stationary boiler and engine, located near the easterly end of the viaduct, furnished the power for the hammers. At the time in question it is practically conceded that the plaintiff's intestate and his colaborers were carrying on the work precisely as it had been conducted for a considerable time previous. The evidence tends to show that the operation of the pneumatic hammers made so great a noise that it was impossible for the employés of the Pittsburg Construction Company, when engaged in their work, to hear the bell or whistle of an approaching train, or its rumble; also, that the structure was so enveloped in steam and smoke resulting from the operation of the boilers at the easterly end of the structure that it was impossible for the workmen to see an approaching train. The evidence also tends to show that, because of the noise made by an approaching train, those operating it could not hear the noise made by the riveters on the viaduct, and because of the smoke and steam which enveloped the viaduct it was impossible for those operating the train to see whether or not workmen were in front of it as it proceeded along the structure.

Such being the situation and conditions, as the jury were justified in finding, the evidence further tended to show that at the time in question one of defendant's trains, known as a "fast mail," approached from the east and went upon the viaduct at a speed of 40 miles an hour, caught the plaintiff's intestate between the rails of the track on which it was going and where he was at work, and he was injured in the manner above indicated. It appears that it was the custom of the Pittsburg Construction Company to have one of its employés warn its other workmen upon the viaduct when one of defendant's trains was approaching; but at the time in question the employé charged with that duty was elsewhere and neglected to give any warning to the plaintiff's intestate or to his co-employés of such approaching train.

It also appears that at a distance of some 3,000 feet from the viaduct the defendant had caused a sign to be erected, instructing the engineer on any train to approach the viaduct at a slow rate of speed. Whether such sign was erected to protect the viaduct while it was in process of construction, or for the purpose of protecting the workmen who were upon it, does not clearly appear. At all events, there was evidence tending to show that such warning was unheeded, and that the train proceeded to the viaduct and upon it at the rate of speed above indi-

cated. There was, however, a sharp conflict in the evidence as to the rate of speed of the train. Witnesses called on behalf of the defendant testified that it was not going to exceed six miles an hour. It, however, is practically conceded that, even if going at the less rate of speed when it went upon the viaduct, the accident could not have been avoided unless the trainmen had been informed that the workmen were in front of the train. This is so because of the fact, as testified to by the trainmen, that because of the noise of the train they could not hear the men at work on the viaduct, and that they could not see them because the structure was enveloped in steam and smoke. So that there would seem to be no question but that those in charge of the operation of the train in question were guilty of the grossest negligence in going upon the viaduct, either at one speed or the other, without ascertaining whether men were at work upon the structure whom they could not see and could not hear and whom they knew could not hear or see the approaching train.

We think it is no answer to the charge of negligence made against the defendant that theretofore in the prosecution of the work the workmen of the Pittsburg Construction Company had been advised of the approach of a train, and had thus been able to get in a place of safety. Plaintiff's intestate and his co-employés were not mere volunteers upon the defendant's tracks. Their relation to the work required them to go upon and be upon the tracks, and in doing so they had rights which it was the duty of the defendant to recognize, and the defendant owed them the duty to use reasonable care for their protection and that they should not while so engaged suffer injury by its employés. Dempsey v. N. Y. C. & H. R. R. Co., 81 Hun, 156, 30 N. Y. Supp. 724; Murphy v. N. Y. C. & H. R. R. Co., 118 N. Y. 527, 23 N. E. 812. But it is unnecessary to cite authorities upon the question of defendant's negligence, because, as above stated, the able counsel for the appellant does not urge that such question was not for the jury.

We now come to the exceptions. Appellant's counsel asked the court to charge as follows:

"I ask the court to charge the jury that in case the jury find that the smoke or steam, or both, obscuring the view, was the sole cause of the injury, and that if the smoke had not been there the accident would not have happened, then they must find a verdict of no cause of action."

The court declined to so charge, and appellant's counsel excepted.

The appellant was not entitled to the charge as requested. It is not of the slightest consequence that the smoke and steam enveloped the viaduct. Of course, that fact alone did not cause the injury to plaintiff's intestate. The defendant's negligence consisted in running onto the viaduct when it was thus enveloped and in such situation that the approaching train could not be seen or heard by the plaintiff's intestate and his fellow workmen. It seems to me it would have been quite as proper to have asked the court to charge, if the accident had occurred in the nighttime, when the viaduct could not have been seen by the engineer, that if the accident resulted because of the darkness, and would not have resulted except for the darkness, defendant would not be chargeable with negligence. The very ground of negligence,

or one of the grounds of negligence, in such case, would be that the engineer ran onto an unlighted structure, where he knew or ought to have known men were engaged in doing work for the defendant, although under a subcontractor.

The other request to charge was as follows:

"I ask the court to charge that, having given proper warning signals in due time, defendant's engineer had the right to assume, under the facts in this case, that any persons working on the track would leave it in time to escape injury, whether he could see any one so working there or not."

The court declined to so charge, and appellant's counsel duly excepted.

I think that clearly, under the evidence, the defendant's engineer had no right to make any such assumption. He knew, or ought to have known, that workmen might be employed upon the viaduct. He knew that they could not hear or see his train approaching. He knew, by reason of the smoke which enveloped the viaduct and the noise that was being made by his train, that he could not see or hear them, and, therefore, in the exercise of ordinary care and prudence, he should have seen to it that workmen engaged in erecting a structure for his master, the defendant, although under an independent contractor, were not run down by his train, when, as he knew, they could not have known of its approach if they continued in the performance of their work.

This court ought not to say that the verdict rendered by the jury in this case is excessive. Plaintiff's intestate was about 29 years of age, was in good health, and was in perfect physical condition. He was a structural iron worker, earning $4 per day. He left, him surviving, the plaintiff, his widow, who is 24 years of age, a girl 19 months old, and a boy 5 months old. It appears that his wages were all devoted to the support of his wife and family. He was a man of good habits and character—a good and kind husband and father. His earning capacity at the time of the accident was clearly demonstrated, and, if the value of his life is measured by such earning capacity, it cannot be said that the verdict is excessive. But, in addition, the evidence clearly indicates that he was a man of such capabilities as, that he might reasonably have been expected to earn much more than he was receiving at the time of the accident. No hard or fast rule can be laid down as to what is the real value of the life of the husband and father to the widow and children.

This court has reduced verdicts rendered in such cases, where in its opinion there was no substantial basis for the same, reversing the judgment of the jury in that regard. Indeed, it is made the duty of this court, when the matter is properly presented, to determine whether or not a verdict rendered by a jury is inadequate or excessive, and it has unhesitatingly exercised its power in that regard, as it believed justice and the rights of the parties required.

In this case, however, we see no logical basis upon which this court can say that the estimate placed by the jury as the value of the life of plaintiff's intestate to his widow and children was not fully supported by the evidence.

It follows that the judgment and order appealed from should be affirmed, with costs. All concur, except WILLIAMS, J., who dissents upon the ground that the verdict is excessive.